**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **LACHUNDRA MACK**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**RYDER SYSTEM, INC. and RYDER TRUCK RENTAL, INC.**<br><br>Defendant. | No.:<br><br>Hon. |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LaChundra Mack, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendants Ryder System, Inc. and Ryder Truck Rental, Inc. ("Defendants"), and states as follows:

## INTRODUCTION

1. This is a collective action that arises out of Defendants' systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. and common law.

2. Plaintiff and the putative collective members consist of current and former customer service representatives or similar positions ("Representatives"), who were compensated on an hourly basis. Throughout the relevant period, Defendants maintained a corporate policy and practice of failing to compensate their Representatives for all pre- and post- shift off-the-clock work.

3. Regardless of the specific job title, all Representatives: (1) are paid on an hourly

basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendants' customers.

4. Defendants required their Representatives to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Representatives only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

5. A Representative's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), would result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6. The Representatives routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Representatives, even those Representatives who were scheduled and paid for only 40 hours per week, worked over 40 hours per week without the required overtime premium for all time worked over 40 hours.

7. Defendants, through their managers, had actual and constructive knowledge that their Representatives were completing this off-the-clock work without compensation. Nevertheless, Defendants suffered or permitted, and in fact trained and required, their Representatives to complete this unpaid work.

8. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert

call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendants' refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited July 16, 2025).

9. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

10. Defendants' practice of failing to compensate their Representatives for all hours worked violated the Representatives' rights under the FLSA.

11. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former hourly customer service representatives, or similar positions who worked for Defendants at any time during the past three years.***

12. Defendants are liable for their failure to pay their Representatives for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

13. Representatives who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre- and post-shift work performed for Defendants, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16. Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

17. Defendants' annual sales exceed $500,000, and Defendants have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees, including Plaintiff and the Representatives, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

18. The Court has personal jurisdiction over Defendants because Defendants conducts business within the Southern District of Florida and maintains a principal place of business in the Southern District of Florida.

19. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendants conduct business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

20. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

21. Plaintiff LaChundra Mack is a resident of Alpharetta, Georgia. Plaintiff worked

for Defendants as a remote Representative from approximately June 2021 to February 2023, when she was promoted. Defendants compensated Plaintiff for her services as a Representative in the form of an hourly wage, most recently at the rate of $17.58 per hour. Plaintiff Mack signed a consent form to join this collective action lawsuit. ***Exhibit A***.

22. Additional putative Collective members were or are employed by Defendants as Representatives in different locations during the past three years and their consent forms will also be filed in this case.

23. Defendant Ryder System, Inc. is a transportation and logistics company.

24. Defendant Ryder System, Inc. is engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.237.

25. Defendant Ryder System, Inc. operates numerous entities as an enterprise through common ownership, common operations, and/or common control, including Ryder Truck Rental, Inc.

26. Defendants are corporations organized under the State of Florida with their corporate headquarters located at 2333 Ponce de Leon Boulevard, Suite 700, Coral Gables, FL 33134.

27. Defendants' registered agent is Corporate Creations Network Inc., located 801 North US Highway 1, North Palm Beach, FL 33408.

28. Upon information and belief, Defendants employed hundreds of Representatives – including Plaintiff – within the past three years and across the United States to assist their customers with their customer service needs.

## GENERAL ALLEGATIONS

29. Throughout their employment with Defendants, Plaintiff and other Representatives were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

30. Defendants employ hundreds of Representatives who work remotely from their homes, providing customer service and support to Defendants' customers throughout the United States.

31. Defendants have employed hundreds of Representatives over the past three years to handle customer phone calls concerning various issues.

32. Defendants compensated their Representatives on an hourly basis and classified them as non-exempt employees under the FLSA.

33. Upon information and belief, Defendants maintain documents that demonstrate the promised hourly wage for each Representative, including but not limited to: offer letters, paystubs, and/or other payroll records.

34. Defendants' Representative positions typically have schedules that require employees to work at least eight (8) hours per day, on average five (5) days each week, and forty (40) hours or more in a workweek. However, in some workweeks, Defendants' Representatives work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendants' Representatives strictly adhere to Defendants' baseline forty (40) hour schedule, the Representative schedule results in Representatives working overtime on a weekly basis.

35. Throughout their employment with Defendants, Plaintiff and the other Representatives' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

36. Once hired, Defendants provided all Representatives with training on, *inter alia*,

how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendants' policies related to each topic. The training Defendants' Representatives receive is substantially, if not entirely, the same and all Representatives are subject to the same disciplinary policies.

37. Plaintiff and other similarly situated Representatives are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendants' Representatives to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. A Representative's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendants force their Representatives to perform the boot-up and login process before clocking into Defendants' timekeeping system.

38. All of Defendants' Representatives use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the Representative's work, and they cannot perform their jobs without them.

39. Once training is completed and to perform their job duties, Plaintiff and all other Representatives are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Representatives are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

40. The pre-shift off-the-clock time Plaintiff and all other Representatives spend booting up, logging in, and logging off their computers directly benefits Defendants' and is integral

and indispensable to the Representative's job responsibilities.

41. Despite knowing Plaintiff and all other Representatives perform this pre-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

42. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other Representatives boot up and log into their computers each day, along with the time they log into their telephone systems.

43. Because Defendants required their Representatives to perform pre- and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Representatives spend working for Defendants. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they worked.

44. Plaintiff and similarly situated Representatives regularly worked overtime and non-overtime hours for which they were not paid.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

45. Like most call centers, Defendants maintained detailed attendance and schedule adherence policies and used them to evaluate their Representatives' job performance.

46. Defendants used their attendance/schedule adherence policies to require their Representatives to arrive early and work off-the-clock so they can be "phone ready" at the start of their shifts.

47. Throughout their employment with Defendants, Plaintiff and other Representatives were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

48. Upon arriving at their home computer, Defendants' Representatives were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

49. The pre-shift boot-up and login process generally consisted of the following steps:

a. The Representatives turned on or woke up their computer and logged in;

b. The Representatives then opened a VPN application and logged in using a username and password;

c. The Representatives then logged in to Defendants' software system;

d. The Representatives then opened the Salesforce system;

e. The Representatives then opened various other software applications, including the Notepad software;

f. The Representatives then opened their email and internet browser;

g. Once all applications to be "call ready" were opened, Representatives would then open the timekeeping application, clock in, and their time clock would start.

50. The boot-up and login process described above took substantial time on a daily basis, ranging from ten to fifteen minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

51. Representatives were required to complete each of these tasks prior to "punching in," as Representatives could not be "phone ready" until these tasks were complete.

52. If Representatives arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

53. Because Defendants' Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

54. Defendants had express and constructive knowledge that their Representatives began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

55. Defendants' Representatives are not compensated for any of this time because Defendants prohibit Representatives from clocking into their timekeeping software before the start of their scheduled shift.

56. The pre-shift off-the-clock work performed by Representatives directly benefits Defendants and is integral and indispensable to their job duties and responsibilities as Representatives.

**B. <u>Post-Shift Off-the-Clock Work</u>**

57. Pursuant to Defendants' policies, training, and direction, Plaintiff and all other Representatives are required to "clock out" of Defendants' timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

58. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five to ten minutes per shift.

59. Defendants' Representatives are also not paid for their post-shift off-the-clock work.

60. The post-shift off-the-clock work Plaintiff and other Representatives perform is compensable, directly benefit Defendants, and the tasks undertaken in connection with the off-the-

clock work are integral and indispensable to their job duties and responsibilities as Representatives.

**C. <u>Defendants Benefitted from the Uncompensated Off-the-Clock Work</u>**

61. At all relevant times, Defendants have required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described above.

62. At all relevant times, Defendants have controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Representatives.

63. At all relevant times, Defendants were able to track the amount of time Plaintiff and all other Representatives spent in connection with pre- and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

64. At all relevant times Plaintiff and all other Representatives were non-exempt hourly employees, subject to the requirements of the FLSA.

65. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the other Representatives in order to pressure them into performing pre- and post-shift work off-the-clock.

66. Defendants expressly trained and instructed Plaintiff and all other Representatives to perform these off-the-clock work activities when they were not "clocked in" to Defendants' timekeeping system.

67. At all relevant times, Defendants' policies and practices deprived Plaintiff and the Representatives of wages owed for off-the-clock pre- and post-shift activities they performed.

Because Defendants' Representatives typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

68. Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over 40 hours and exactly which weeks they worked under 40 hours.

69. Defendants knew or should have known that the time spent by Plaintiff and other Representatives in connection with the off-the-clock pre- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

70. Despite knowing Representatives performed off-the-clock work before, during, and after their shifts, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

71. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

72. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> ***All current and former hourly customer service representatives or similar positions who worked for Defendants at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

73. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate

Plaintiff and other similarly situated Representatives.

74. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside salespersons.

75. Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours, for which they are due both overtime gap time and overtime.

76. Defendants assign and/or are aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

77. Upon information and belief, Defendants utilize a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

78. As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engage in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

d. Willfully failing to pay its employees, including Plaintiff and the members of the

FLSA Collective, for off-the-clock work, including the pre-shift boot-up and post-shift shutdown process.

79. Defendants are aware or should be aware that federal law required them to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

80. Defendants' unlawful conduct has been and continues to be widespread, repeated, and consistent.

81. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

82. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre- and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

83. There are many similarly situated current and former Representatives who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

84. Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

85. All of the estimations discussed herein will be refined after collective discovery is

completed.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly customer service representatives or similar positions, who worked for Defendants at any time during the applicable statutory period.***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

87. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

88. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown activities each shift is compensable;

c. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

89. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result

of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

90. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

91. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

92. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

93. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

94. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also

appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

95. Plaintiff re-alleges and incorporates all previous paragraphs herein.

96. At all times relevant to this action, Defendants were employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

97. Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

98. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

99. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

100. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

101. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

102. At all times relevant to this action, Defendants required Plaintiff and the proposed Collective members to regularly perform 10 to 15 minutes or more of pre-shift computer boot-up and login time, and five to ten minutes of shutdown and log off time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

103. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

104. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

105. In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

106. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how much time Representatives spent working off-the-clock to complete pre- and post-shift activities, and Defendants could have properly compensated Plaintiff and the proposed Collective members for the boot-up and login work they performed, but did not.

107. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II
## (On Behalf of the Rule 23 Nationwide Class)
## BREACH OF CONTRACT

108. Plaintiff re-alleges and incorporates all previous paragraphs herein.

109. Defendants had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendants.

110. For example, Defendants offered to compensate Plaintiff at a minimum of $17.58 per hour if she agreed to perform services for Defendants as a customer service representative. Plaintiff accepted Defendants' offer and performed under the contract by fulfilling her duties as a customer service representative.

111. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendants' contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre- and post-shift work activities, described herein.

112. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendants breached their contracts with Plaintiff and the Rule 23 Nationwide Class.

113. Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendants paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

114. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

115. As a direct and proximate result of Defendants' contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

116. Plaintiff re-alleges and incorporates all previous paragraphs herein.

117. The Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

118. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

119. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

120. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

121. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

122. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

123. Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

124. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the

Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

125. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LaChundra Mack, on behalf of herself and on behalf of all others similarly situated, requests judgment as follows:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II and III);

d. Designating Plaintiff LaChundra Mack as the Representative of the FLSA Collective action and the Rule 23 Nationwide Class, and undersigned counsel as Collective/Class counsel for the same;

e. Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendants' violations of the FLSA were willful;

g. Declaring Defendants breached their contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

h. Declaring Defendants were unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i. Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendants and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k. Awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: November 17, 2025

Respectfully Submitted,

*/s/ Christopher J. Maranges*
Christopher J. Maranges
Maranges, PLLC
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
chris@marangeslaw.com
Phone: 561-210-9151

Jesse L. Young, Esq.*
Sommers Schwartz, P.C.
141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
jyoung@sommerspc.com
Phone: (269) 250-7500

**pro hac vice application forthcoming*

*Attorneys for Plaintiff and the putative FLSA Collective*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

/s/ *Christopher J. Maranges*
Christopher J. Maranges
Maranges, PLLC
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
chris@marangeslaw.com
Phone: 561-210-9151

Jesse L. Young, Esq.*
Sommers Schwartz, P.C.
141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
jyoung@sommerspc.com
Phone: (269) 250-7500

**pro hac vice application forthcoming*

*Attorneys for Plaintiff and the*
*putative FLSA Collective*